**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice* forthcoming)
PBrennan@jenner.com
353 North Clark Street
Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

Attorneys for Defendants Kia America, Inc. and Hyundai Motor America

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRITTNEY SANDERS; JANELLE POPKEN; BONNY NASIMI; JENNIFER ANDERSON; BAYRON ORTIZ; CEKIA WILSON; TERRA SNOVER; KRISHNAPRASAD CHANDRASEKHARAN; ASHLEY DELGADO; SAPPHIRE JAECKEL; JOLENE SCHRADER; JONAS DOMKUS; PARISA AGHAEI; FE HUGO; DANNAY MCDANIELS; ENRIQUE REYES; JOSHUA VEGA; WILLIAM RICHARD MARTINEZ; JOSE MEDINA; JENNIFER PORTER; GILBERTO VELASCO; KALAYSIA EVANS; RACHEL MARQUEZ; KATHERINE BURBA; JANINA GATHER; MEGAN RANGER; TERESA HERNANDEZ; ADRIA ANTOINE; KIMBERLY RODRIGUEZ; RAYMOND EARL BAKER JR.; JOSEPH MEDINA; MONICA ALFARO; DANIEL PLACENTI; LINDSEY MATTHEWS; VICTORIA TSANG; JORGE LIRA; JORGE GONZALES; THOMAS JARAMILLO; ERICA SANDERS; LISSETTE SALAZAR; JASON ROSENTHAL; HILDA MACIEL-RUIZ; FRANCISCO SANCHEZ; JASMINE GERGIS; GREGORY SADOWSKI; PATTI CHORN; CIARA CUEVAS- | Case No. 8:23-cv-00486<br><br>**NOTICE OF REMOVAL** |

FELIX; KIWON KIM; MILDRED REESE; GLINNIS STURDIVANT; BRANDON KHANH LUU; HOA KAING; AZJENNAE FRAZIER; FINA PAYTON; ANGELICA MARIN; MARIA OCHOA; CRISTIAN RODRIGUEZ; MYTIANA MITCHELL; VALERIE BARNES; BLANCA IBARRA; DORELYN CARREON; DAMON WHITE; CLAUDIA BARRAGAN; JOEL SALAS; JOSEPH RIVERA; LINDA SOBEL; COURTNEY HALL; CESAR GARCIA; JUAN NATHANIEL; CAROLINA FRANCO; ALBERT RIVERA; ALEXIS HINDSON-MORAZA; BRIAN VINEYARD; APRIL JASMIN MARTINEZ; JACKELINNE MOLINA; ARVIN PATEL; ERICA GALVAN; ROBERT ROBERTSON; BLANCA RUIZ; EARL SMITH; AALIYAH BERRY; ASIA MORRIS; ORLANDO GARCIA; KEVIN BOULT; GAYRETTA MCCLENDON; MICHAEL CAMPAGNA; MILLER KEITH MALONE; OLIVIA CHAVIRA; ALEXA RAMIREZ; ANGELA CARTER; JAMES CLARK FRANZMAN; MURPHY GUIDICE; MARCOS BARAJAS; JOANNE SHACK; CHERYL WESTBROOK; LISA PAYNE; CHRISTINA BELL; GABRIEL MONTOYA; KAREN DRANEY; EDWARD WHITE; MARCOS RIVERA; BRYCE HOWELL; SEAN GARCIA; SHENESIA GLADNEY; JOHANNA MELCHOR; SHARON GRAF; HOPE CAIN; SILVIA ESTRADA; ALEXANDER ANDERSON; ALEXANDRA LOPEZ; ROSA MORENO AGUILAR; AMIEE KIM; GILMORE AUGUSTUS; ANTOINETTE CURRY; SERENA GUTIERREZ; ERIC SVIATEK,

Plaintiffs,

v.

KIA AMERICA, INC., a California Corporation; HYUNDAI MOTOR AMERICA, a California Corporation; and DOES 1 through 100, inclusive,

Defendants.

Defendants Kia America, Inc. ("KA") and Hyundai Motor America ("HMA") (together, "Defendants") hereby provide notice of and effect the removal of this action from the Superior Court of California, County of Orange to the United States District Court for the Central District of California. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), for the reasons set forth below.

## I. FACTUAL BACKGROUND AND STATE COURT PROCEEDINGS

On December 13, 2022, the U.S. Judicial Panel on Multidistrict Litigation (the "Panel") created MDL No. 3052 in the Central District of California for suits by consumer plaintiffs who purchased or leased Kia and Hyundai branded vehicles that lack certain anti-theft technology, which those plaintiffs allege should have been standard. *See In re Kia Hyundai Vehicle Theft Litig.*, 2022 WL 17843100, at *1 (J.P.M.L. Dec. 13, 2022). As of the date of this filing, there are nearly 60 actions currently centralized in MDL No. 3052 (the "MDL Actions") before the Honorable James V. Selna. *See In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation*, Case No. 8:22-ML-3052.

The overwhelming majority of the MDL Actions are putative consumer class actions (the "MDL Consumer Class Actions"). The MDL Consumer Class Actions have been brought by more than 150 named plaintiffs and allege putative classes that include all purchasers or lessees of Kia and Hyundai branded vehicles that lack engine immobilizers nationwide. The plaintiffs in several of the MDL Consumer Class Actions—including the plaintiffs in a class action filed by the same counsel representing Plaintiffs[1] in this case—seek to represent California subclasses. *See, e.g.*, *McQuarrie v. Kia America, Inc.*, Case No. 8:22-cv-01721 (C.D. Cal. filed Sept. 21, 2022).

---

[1] "Plaintiffs" refers to the 116 named plaintiffs in this action.

Plaintiffs filed this action in Orange County Superior Court on February 6, 2023, and effected service on Defendants on or around February 17, 2023. Attached hereto as **Exhibit A** are copies of the complaint and summons in *Sanders v. Kia America, Inc.*, Case No. 30-2023-01306793-CU-PL-CXC (the "State Court Action" or "*Sanders*"). No substantive matters have been addressed in the State Court Action. Pursuant to 28 U.S.C. § 1446(a), copies of all other process, pleadings, and orders that have been filed in the State Court Action are attached hereto as **Exhibit B**.

Plaintiffs' allegations are nearly identical to the allegations in the MDL Consumer Class Actions. Plaintiffs allege that certain vehicles manufactured and/or sold by Defendants contain a purported defect that allows these vehicles to be stolen by a third party or parties. *See, e.g.*, Ex. A, *Sanders* Compl. ¶¶ 1–5, 130–36. Based on these allegations, Plaintiffs assert five grounds for relief: (1) violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*. (Count I, *id.* ¶¶ 137–62), (2) strict liability – design defect (Count II, *id.* ¶¶ 163–70), (3) gross negligence (Count III, *id.* ¶¶ 171–82), (4) gross negligence – failure to recall (Count IV, *id.* ¶¶ 183–92), and (5) breach of implied warranty of merchantability (Count V, *id.* ¶¶ 193–201). In their prayer for relief, Plaintiffs seek a judgment against Defendants for, *inter alia*, compensatory damages, punitive damages, injunctive relief, and attorneys' fees. *Id.* at 29–30.

The present case is the second of two very similar actions brought by the same plaintiffs' counsel. The first, *McQuarrie*, was filed in the Central District of California on September 21, 2022. Attached hereto as **Exhibit C** is a copy of the complaint in *McQuarrie*. The *McQuarrie* plaintiffs seek to represent a California class of "all individuals and entities in California that purchased or leased a 2011-21 Kia vehicle or 2015-21 Hyundai vehicle equipped with traditional key ignition starter systems but which lack an engine immobilizer," in addition to a nationwide

class, a Florida subclass, and a Nevada subclass. Ex. C, *McQuarrie* Compl. ¶¶ 38–42. *McQuarrie* was transferred to Judge Selna for coordinated or consolidated pretrial proceedings as part of MDL No. 3052 on January 20, 2023.

The claims brought by Plaintiffs are entirely subsumed by *McQuarrie* as well as numerous other MDL Consumer Class Actions already pending in MDL No. 3052. *Compare* Ex. A, *Sanders* Compl. ¶¶ 23–29 (asserting claims for violations of the CLRA, strict liability – design defect, gross negligence, gross negligence – failure to recall, and breach of implied warranty of merchantability on behalf of California consumers), *with* Ex. C, *McQuarrie* Compl. ¶¶ 21–36 (asserting claims for, *inter alia*, violations of the CLRA, strict liability – design defect, negligence, and breach of implied warranty of merchantability on behalf of a putative California consumer class).[2] Indeed, Plaintiffs are members of the California putative class defined in *McQuarrie*, for they, too, allege that they are California purchasers or lessees of 2011-2021 Kia vehicles or 2015-2021 Hyundai vehicles equipped with traditional key ignition starter systems and lacking engine immobilizers. *See* Ex. A, *Sanders* Compl. ¶¶ 7–122. The only real difference is that, in *Sanders*, Plaintiffs do not seek to represent a class. Nonetheless, Plaintiffs are putative class members of several of the MDL Consumer Class Actions already before Judge Selna.

Despite actively participating in an ongoing MDL and litigating a first-filed consumer class action that wholly subsumes all of Plaintiffs' claims,[3] Plaintiffs'

---

[2] Currently, seven MDL Actions seek to represent putative California subclasses of which Plaintiffs are members. *See Yeghiaian v. Kia America, Inc.*, Case No. 8:22-cv-01440 (C.D. Cal. filed Aug. 3, 2022); *Morrow v. Hyundai Motor America*, Case No. 8:22-cv-01674 (C.D. Cal. filed Sept. 12, 2022); *McQuarrie*, Case No. 8:22-cv-01721 (C.D. Cal. filed Sept. 21, 2022); *Lamons v. Kia America, Inc.*, Case No. 8:22-cv-01956 (C.D. Cal. filed Oct. 24, 2022); *Lucas v. Kia America, Inc.*, Case No. 8:22-cv-02090 (C.D. Cal. filed Nov. 16, 2022); *Winston v. Kia America, Inc.*, Case No. 8:22-cv-02329 (C.D. Cal. removed Dec. 29, 2022); *Placencia v. Kia America*, Case No. 8:23-cv-00139 (C.D. Cal. filed Jan. 23, 2023).

[3] Notably, Plaintiffs' counsel highlighted this mass tort action in his application to obtain a leadership position in the MDL proceeding, *see* Appl. of Jonathan A. Michaels for Appointment to Fact Disc. Subcommittee, *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation*, Case No. 8:22-ML-3052 (C.D. Cal. filed Jan. 23, 2023), ECF Nos. 27, 32, though this attempt was

counsel has chosen to file a near-identical lawsuit—artfully styled as a mass tort action—in California state court. This purported mass tort action is a transparent attempt by Plaintiffs' counsel to skirt federal jurisdiction, avoid the centralized MDL proceedings before Judge Selna, drain judicial resources, and create duplicative paths for Plaintiffs—and therefore Plaintiffs' counsel—to recover. In actuality, this action is a consumer class action in disguise. Plaintiffs' counsel's blatant gamesmanship must be stopped.

## II. <u>REMOVAL IS PROPER UNDER 28 U.S.C. § 1332(d)</u>

Section 1441(a) of the United States Code provides for removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Under CAFA, the district courts of the United States have original jurisdiction over any class action (i) involving a plaintiff class of 100 or more members; (ii) where at least one member of the plaintiff class is a citizen of a state different from any defendant ("minimal diversity"); and (iii) in which the matter in controversy exceeds (in the aggregate) the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (5); *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (noting that CAFA's "provisions should be read broadly"); *see also* 28 U.S.C. § 1453(b).[4]

Although Plaintiffs' counsel has not styled this action as a "class action," as demonstrated below, that fact does not preclude removal under CAFA. To the contrary, the strong public policy embodied in CAFA that supports removal and centralization with the pending MDL in this circumstance militates in favor of looking past the four corners of the pleading (as several other courts have done under

---

ultimately unsuccessful, *see* Order No. 2: Adoption of Organization Plan and Appointment of Counsel, *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation*, Case No. 8:22-ML-3052 (C.D. Cal. issued Feb. 9, 2023), ECF No. 50.

[4] By demonstrating that this matter is removable under 28 U.S.C. § 1332(d), Defendants do not waive, and expressly reserve, their arguments that there is no basis to certify a class in this matter.

similar circumstances) to find that all three conditions of CAFA are met in this action, and therefore the action is removable under 28 U.S.C. § 1332(d).

**A. The Parties Are Minimally Diverse.**

CAFA's minimal diversity standard is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Here, KA is a California corporation with its principal place of business in Irvine, California. *See* Ex. A, *Sanders* Compl. ¶ 123. HMA is a California corporation with its principal place of business in Fountain Valley, California. *Id.* ¶ 124. Thus, Defendants are both citizens of California. *See* 28 U.S.C. § 1332(c)(1). Plaintiffs also reside in California. *See* Ex. A, *Sanders* Compl. ¶¶ 7–122. Nonetheless, Plaintiffs' transparent attempt to evade federal jurisdiction by strategically limiting the litigants named in this action should not be permitted.

The purpose of CAFA is "to mak[e] it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction." *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 408 (6th Cir. 2008) (quoting S. Rep. No. 109-14, at 5 (2005)). CAFA was designed to create "efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court" and to place "the determination of more interstate class action lawsuits in the proper forum—the federal courts." *Id*. As such, "CAFA's 'provisions [are meant to] be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89 (quoting S. Rep. No. 109-14, at 43).

Courts have relied on CAFA's broad reach to set aside artificial limitations on putative classes such as the one created by counsel in this case. *Simon v. Marriott International, Inc.* is instructive. No. 19-1792, 2019 WL 4573415 (D. Md. Sept. 20, 2019) ("*Marriott*"). There, plaintiffs, on behalf of themselves and others similarly situated, sought injunctive relief and monetary damages in Connecticut state court

for claims arising out of a data breach incident that was the subject of an ongoing MDL in the United States District Court for the District of Maryland. *Id*. at *1. Plaintiffs' counsel had intentionally manipulated the pleading to seem to fall outside the confines of CAFA and therefore avoid removal and inclusion in the MDL. *Id*. Nonetheless, Defendant Marriott removed the action, which was transferred to the District of Maryland where the MDL that subsumed the plaintiffs' claims was already pending. *Id*. at *2. Plaintiffs moved to remand, arguing the court lacked subject matter jurisdiction because CAFA's minimal diversity requirement was not met. *Id*. at *2.

The *Marriott* court faced a closely analogous issue to what is presented here: "Can a class action plaintiff pursue a lawsuit in state court consisting of claims that already are included in a CAFA suit within an existing MDL by manipulating the allegations in their complaint to skirt the minimal diversity requirement of CAFA?" *Id*. at *3. The court answered in the negative, acknowledging that "both CAFA and MDL considerations warrant[ed] looking beyond the pleadings." *Id*. at *4. Because plaintiffs' claims were "wholly included" in the other two class actions pending in the MDL, the court found that plaintiffs' attempt to plead around the minimal diversity requirement "defeat[ed] the purpose of CAFA by forcing litigation of the same claims, in both state and federal court." *Id*. at *4; *see also In re Kitec Plumbing Sys. Prod. Liab. Litig.*, No. 09-MD-2098-F, 2010 WL 11618052, at *6 (N.D. Tex. Aug. 23, 2010) ("The Court may pierce the pleadings in order to determine the propriety of federal jurisdiction. In this multidistrict litigation, the Court finds it appropriate to look beyond the four corners of the *Hillary* and *Steiner* Complaints and consider as well the claims of the individual members of the *Fliss* class action.").

Accordingly, the *Marriott* court rejected plaintiffs' "transparent effort to avoid federal jurisdiction" in order to "recover from both their state court action and from the MDL" and denied the motion to remand. *Marriott*, 2019 WL 4573415, at

*4; *see also Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 954 (9th Cir. 2009) (recognizing that "competing claims to represent the same class of plaintiffs might raise concerns that overlapping or identical claims would be litigated in multiple jurisdictions"); *see also Freeman*, 551 F.3d at 407 ("CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction.").

The *Marriott* court reiterated that CAFA's "interest in fairness and efficiency is even stronger in the context of MDLs than in a stand-alone CAFA class action because MDLs combine multiple class (and individual) actions into one lawsuit for purposes of pretrial proceedings." *Marriott*, 2019 WL 4573415, at *4. Thus, the imperative to protect federal jurisdiction under CAFA is vital where, as here, an MDL proceeding covering the same issues—and the same putative class members—is already underway. *Id.* at *4 ("Allowing [plaintiffs] to manipulate CAFA would be harmful . . . because it could disrupt the orderly progress of the pretrial process in the [] MDL.").

The reasoning in *Marriott* applies here with equal force. Indeed, the MDL Consumer Class Actions before Judge Selna in MDL No. 3052 seek certification of at least 7 putative California subclasses and 48 putative nationwide classes that encompass all of the individual Plaintiffs who are part of the artificially truncated *Sanders* action. For example, in *McQuarrie*, plaintiffs—again, represented by the same Plaintiffs' counsel here—seek to represent a California class comprised of "all individuals and entities in California that purchased or leased a 2011-21 Kia vehicle or 2015-21 Hyundai vehicle equipped with traditional key ignition started systems but which lack an engine immobilizer." Ex. C, *McQuarrie* Compl. ¶ 41. As in *Marriott*, this Court may look past the artificial manner in which Plaintiffs have attempted to "divest[] th[e] [MDL] court of jurisdiction it already has acquired." *Marriott*, 2019 WL 4573415, at *4.

Moreover, as in *Marriott*, allowing Plaintiffs to pursue their individual claims in a California state court runs counter to both CAFA and the MDL. Plaintiffs are pursuing the same damages arising from the same alleged events that are at issue in the MDL, and they are doing so on behalf of a subset of the same individuals whose interests are already being adjudicated in the MDL.

The whole purpose of having an MDL is to enable "the resolution of mass disputes by bringing similarly situated litigants from around the country, and their lawyers, before one judge in one place at one time." Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2340 (2008). The centralized proceedings are designed to avoid duplication of discovery, streamline key issues, prevent inconsistent rulings, and conserve the resources of the judiciary, the parties, and their counsel. *See, e.g.*, *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) ("Consistency as well as economy is [] served" by single MDL court resolving common issues); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) ("The purpose of [a centralized MDL proceeding] is to further judicial economy and eliminate the potential for conflicting pretrial rulings.") (citing Stanley A. Weigel, J., *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575 (1978)). Plaintiffs' artful pleading threatens to undermine all these goals.

For all these reasons, as the court did in *Marriott*, the Court here may look to the putative class members in the MDL Consumer Class Actions to establish minimal diversity in this case. Accordingly, the minimal diversity requirement is satisfied because at least one member of the putative classes asserted in numerous MDL Consumer Class Actions resides in a state other than California. *See* 28 U.S.C. § 1332(d)(2)(A); *see also Rosas v. Carnegie Mortg., LLC*, No. 11-7692, 2012 WL 1865480, at *5 (C.D. Cal. May 21, 2012) ("Because the complaint alleges a 'nationwide class,' . . . minimal diversity necessarily exists.").

**B. The Putative Class Is Sufficiently Numerous.**

The numerosity requirement is satisfied for the same reason minimal diversity exists in this case. Because Plaintiffs are subsumed within numerous putative classes already in the MDL, including the *McQuarrie* putative classes, and this action is structured solely to avoid CAFA jurisdiction, the Court may look past the four corners of the *Sanders* complaint to the number of proposed class members in the MDL Consumer Class Actions, such as *McQuarrie*, to satisfy the numerosity requirement. *See Marriott*, 2019 WL 4573415, at *1; *see also Freeman*, 551 F. 3d at 406–08; *see also Kitec*, 2010 WL 11618052, at *5–7.

In *McQuarrie*, plaintiffs allege that their proposed nationwide class and/or state-specific subclasses encompass "thousands or tens of thousands" of individual Class members. Ex. C, *McQuarrie* Compl. ¶ 48; *see also id*. ¶ 44 ("The number of class members is presently unknown to Plaintiffs . . . . However . . . Plaintiffs allege that Defendants have each sold many tens of thousands of Defective Vehicles throughout the United States."). These allegations establish that the proposed class and subclasses have over 100 members.

In addition, there over 100 named plaintiffs in this action. *See* Ex. A, *Sanders* Compl. ¶¶ 7–122.

Thus, the numerosity jurisdictional requirement under CAFA is met.

**C. There Is at Least $5,000,000 in Controversy.**

"In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). The court must then "add[] up the value of the claim of each person who falls within the definition of [the] proposed class." *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

To satisfy the amount-in-controversy requirement, a defendant must establish only that "the potential damages could exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (emphasis added) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)). In other words, "[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn*, 536 F. Supp. 2d at 1205; *see also, e.g.*, *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) ("[T]he amount in controversy is the 'amount at stake in the underlying litigation.' 'Amount at stake' does not mean likely or probable liability; rather it refers to possible liability.").

This requirement is satisfied for the same reason minimal diversity and numerosity exist in this case. Because Plaintiffs are subsumed within numerous putative classes already in the MDL, including the *McQuarrie* classes, and this action is structured solely to avoid CAFA jurisdiction, the Court may look to the amount placed in controversy in the MDL Consumer Class Actions, such as *McQuarrie*, to satisfy this requirement. *See Marriott*, 2019 WL 4573415, at *1; *see also Freeman*, 551 F. 3d at 406–08; *see also Kitec*, 2010 WL 11618052, at *5–7.

The amount placed in controversy in the *McQuarrie* complaint satisfies CAFA's jurisdictional threshold. Plaintiffs allege that "tens of thousands" of vehicles contain the purported defect, and although Plaintiffs' complaint does not specify a precise amount of damages, it alleges that those putative class vehicles have caused potentially "thousands or tens of thousands" of putative class members various damages, including "the difference in value" between a vehicle with the alleged defect and a similar vehicle without the alleged defect, "repairs to damaged vehicles," the "replacement cost of stolen vehicles," "the purchase price of security devices to prevent theft," and "the increase in insurance premiums." Ex. C, *McQuarrie* Compl. ¶¶ 44, 48, 190. Moreover, Plaintiffs also seek attorneys' fees,

which, in the consumer class action context, can be significant. *See id*. at 46. Given the existence of tens of thousands of putative class vehicles and class members, it is more than "reasonably possible" that there is at least $5,000,000 in controversy. *Greene*, 965 F.3d at 772. As such, the district courts of the United States have jurisdiction over this matter. *See* 28 U.S.C. § 1332(d)(2).

**D. Venue Is Proper.**

The Central District of California is the proper venue for this action upon removal because this "district and division embrac[e]" Orange County Superior Court. 28 U.S.C. § 1441(a); *see also* 28 U.S.C. § 84(c) (providing that Orange County is part of the Central District of California).

**E. Other Requirements for Removal Are Met.**

This Notice of Removal is timely. Under 28 U.S.C. § 1446(b), a notice of removal of a civil action must be filed within 30 days of service of the complaint and summons. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) ("[W]e hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service."). Plaintiffs effected service on Defendants on or around February 17, 2023. Because this Notice of Removal is filed within 30 days of February 17, 2023, it is timely.

No attorneys for Defendants have entered an appearance or filed any pleadings or other papers responding to the complaint in Orange County Superior Court.

Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Defendants are being filed herewith as Exhibits A and B.

Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly give written notice of the filing of this Notice of Removal to Plaintiffs and will promptly file a written notice, along with a copy of this Notice of Removal, with the Clerk of the Orange County Superior Court and serve it on all parties.

## III. RESERVATION OF RIGHTS AND DEFENSES

Defendants hereby reserve all of their defenses and rights, and nothing in this Notice of Removal should be construed as in any way conceding the truth of any of Plaintiffs' allegations or waiving any of Defendants' defenses.

## IV. CONCLUSION

WHEREFORE, Defendants hereby remove this action to this Court on the basis of the Court's original jurisdiction over the action under CAFA.

DATED: March 17, 2023 JENNER & BLOCK LLP

By: /s/ *Kate T. Spelman*
Kate T. Spelman

Attorney for Defendants Kia America, Inc. and Hyundai Motor America